Emanuel E. STEELE and Marjorie K. Steele,
Husband and Wife, Appellees,

v.

Harry NORTHUP and Merle Northup,
Husband and Wife, Appellants.

No. 53473.

Supreme Court of Iowa.

June 10, 1969.

John P. Roehrick, Des Moines, for appellants.

Vern Ball, Bloomfield, and William R. Dew, Ottumwa, for appellees.

BECKER, Justice.

This forcible entry and detainer action was commenced in the district court of Davis County. After hearing the court found defendants were wrongfully in possession of the subject real estate, ordered their removal and provided that plaintiffs be put in possession. Defendants appeal. We affirm.

It is necessary to review the prior litigation between these parties in order to fully understand the present litigation. In March 1960 plaintiffs were about to lose the farm, the subject of this litigation, they were purchasing. They borrowed money from defendant Harry Northup and assigned their purchase contract to him. The agreement granted an option to redeem by March 1, 1962. The controversy over the transaction resulted in a suit in equity which reached this court and was decided September, 1966 in plaintiffs' favor, Steele v. Northup, 259 Iowa 443, 143 N.W.2d 302. Time to redeem had been extended. The amount necessary to redeem had been determined by the court and paid to the clerk of the district court and the option was held to have been validly exercised. All of these actions were approved by this court in the opinion cited above.

A trial court decree in the same case quieted title to the real estate in plaintiffs. No appeal was taken from that decree.

While this litigation went forward plaintiffs also commenced a forcible entry and detainer action on March 31, 1965. This action resulted in judgment for plaintiffs, defendants were removed from the property and plaintiffs were placed in possession on April 23, 1965. This action was not appealed. Defendants remained out of possession until October 1967 when they took certain actions which culminated in this second forcible entry and detainer action, the third relevant lawsuit between the parties.

The property involved consists of 313 acres of farmland with no usable building on it. After regaining possession April 23, 1965 plaintiffs orally rented the cropland to Harley and Jerry Sloan for the crop years 1965, 1966 and 1967. Both parties to this oral lease testified it was their understanding the agreement terminated each year after the crops had been harvested. It was the type of sharecrop agreement referred to as "mere croppers" in section 562.5, Code, 1966.

The trial court made the following factual findings: "On or about October 6, 1967, Defendants entered on Plaintiffs' land by parking their small trailer in the driveway which connects with the public highway. Defendants subsequently brought a larger trailer house upon the premises, again locating it near the said driveway and Plaintiffs' land. Defendants obtained no permission from anyone for their entry. No one was present at the time the Defendants entered Plaintiffs' premises, nor was the fact of the entry known to Plaintiffs until after they had parked their trailer on October 6, 1967. Plaintiff, Marjorie Steele, testified on October 6, 1967, she learned of Defendants' entry and that she told them they could not stay. On October 13, 1967, there was an altercation between Defendants, Plaintiffs and their attorney, Mr. Ball. Defendants' right to possession of the land and to a share of the crops was disputed by Plaintiffs. On this occasion physical violence was threatened by Defendant. On October 12th, Defendant, Merle Northup threatened the Sloans with a firearm.

"On December 11, 1967, Plaintiffs caused a three-day notice to quit to be served on Defendants, on December 22, 1967, the

present action was instituted by the Plaintiffs.

"The sharecroppers Harley Sloan and Jerry Sloan, had all crops harvested prior to December 14th, 1967, and all their rights to the possession of the crops land ceased as of the time of harvest.

"There is no evidence Defendant's occupied any portion of Plaintiffs' land other than the land actually occupied by their trailer prior to the filing of Plaintiffs' Petition. The land occupied by Defendants' trailer was not cropland nor tillable land, but was land immediately next to the driveway of Plaintiffs' land within 125 feet of the public highway.

"After the filing of Plaintiffs' Petition on December 22, 1967 the Defendants for the first time entered upon Plaintiffs' land outside of the tract, actually occupied by their trailer on October 6, 1967. Defendants now claim possession of the entire farm and Defendant, Harry Northup, in January of 1968 ordered the Plaintiff, Emanuel E. Steele from the premises in question."

■■■ I. Actions commenced in district court under chapter 648, Code, 1966 Forcible Entry and Detention, are tried as equitable actions, section 648.5. In construing chapter 648 we give the chapter a liberal construction with a view to promote its object. Rudolph v. Davis, 239 Iowa 372, 375, 30 N.W.2d 484. Our review of equity cases is de novo. Rule 334, Rules of Civil Procedure.

II. Defendant seeks reversal on the proposition that the court erred in considering evidence of title and right to possession in a forcible entry case, citing Rudolph v. Davis, 239 Iowa 372, 30 N.W.2d 484; Missildine v. Brightman, 234 Iowa 1339, 14 N.W.2d 700; Stephens v. McCloy, 36 Iowa 659; Emsley v. Bennett, 37 Iowa 15; Settle v. Henson, 1 Morris 111. The following statement in Emsley v. Bennett is said to present the narrow issues in a forcible entry case of this type: " 'In this action the question of title or right of possession is not involved and cannot be tried. The facts of actual possession by the Plaintiff, and an entry by force, fraud or stealth, or an unlawful detainer by the defendant are the only ones to be determined—and they alone are the matters in issue, irrespective of the ownership or right of possession.' " (loc. cit. 37 Iowa at page 17).

The foregoing rule was announced in 1873 when (1) sole original jurisdiction was in justice of the peace courts (appeal was available to district court) and (2) title was not to be investigated. Section 2362–2376, Code, (1851). The early statutory intent was clear from the summary nature of the procedure, sole original jurisdiction in the justice court and the Iowa constitutional prohibition against justices of the peace considering questions involving title to real estate, Iowa Constitution, Article XI, section 1. The provisions remained in the Code in the Revision of 1860, sections 3952, 3966 and in the Code of 1873, sections 3611–3624. However, the statutory action of forcible entry and detention has been considerably changed since 1873. Original jurisdiction was made concurrent in the district, superior and justice of peace courts in the 1897 Code, section 4211; municipal courts were added to the list in 1917, Laws of the Thirty-seventh General Assembly, chapter 230. By 1897 the prohibition against investigation into title had been altered and what is now section 648.13, Code, 1966, appeared at section 4216 of the 1897 Code.

Section 648.13 provides: "The question of title can only be investigated in the district court, * * *." With the single exception of cases involving holding over after mortgage foreclosure and execution sales, title questions cannot be raised by pleading in municipal or justice of the peace court. If this single exception is raised in a lower court, section 648.14 provides for immediate transfer to district court. When title is put in issue the cause shall be tried (in district court) by equitable proceedings, section 648.15.

■ A careful study of the foregoing statutes with due regard to the history of their amendments indicates that title is a justiciable issue in a forcible entry and detainer action when the action has been originally commenced in district court or when the case has been transferred to such court after title has been raised in a lower court under section 648.1 (4). Missildine v. Brightman, supra, cited by defendants, was commenced in municipal court. Under the plain terms of the statute title could not be put in issue in such case. The court merely held title had not, in fact, been put in issue.

■ Of course, chapter 648 was not passed as a primary vehicle to establish or test title. On the contrary it is a summary statutory remedy for possession. The early statutes precluded title questions as issues. "The question of title can not be investigated in this action." Revised Code, 1860, section 3961. But this section has been repealed and, as noted title does become germane in certain cases. Thus we have Kelley v. Kelley, 187 Iowa 349, 356, 174 N.W. 342, holding: " * * *. An action of forcible entry is not for the purpose of determining the title or the right to the possession *in a broad sense,* but rather to determine whether or not the defendant, at the time the suit is heard and determined, is wrongfully in possession." (Emphasis added). The Kelley case was also started in justice court and was held to be moot on appeal to the district court because defendant abandoned possession pending appeal. The case does not say title cannot be investigated in a case commenced in district court. To so state would be contra to the words in the statute. When title is germane to the forcible entry and detainer issues it may be the subject of inquiry provided statutory prerequisites are met; i. e., action commenced in district, municipal or superior court or raised as provided in section 648.13 of the Code.

The two Rudolph v. Davis cases, 237 Iowa 1383, 25 N.W.2d 332 and 239 Iowa 372, 30 N.W.2d 484, involve a forcible entry action in which the trial court and this court clearly considered title questions and the right to possession. The cases, taken together, are strikingly similar to this case in that each had its genesis in a prior action which determined title to be in plaintiff but title was also relevant and considered in the latter action. See also Gregory v. Gregory, 248 Iowa 672, 82 N.W.2d 144 where title and right to possession were considered in a forcible entry and detention action commenced in district court.

■ We hold, therefore, that plaintiffs had a right to show the source of their claimed right to possession by showing the facts reviewed herein.

■ III. Defendants further claim plaintiffs were not the real parties in interest and not in possession of the land when they moved onto the property. They maintain the sharecroppers were in possession, not plaintiff-owners, and only the sharecroppers could maintain an action against them in forcible entry and detention. This is true, they claim, even after the tenant's lease has expired. They cite 35 Am.Jur.2d, section 23 for such position and contend ten states follow the rule. Since forcible entry and detainer is a purely statutory remedy the action of each state depends on its own particular statutes which must be applied to the peculiar facts of each case. Plaintiffs retained possession of all acreage except the tillable land. The tenants farmed only the cropland. Plaintiffs cut weeds and mended fences on the remainder. The trial court found defendants took possession of the portion of the acreage over which plaintiffs, as landlords, had retained control. Further, the trial court found, at the time action was commenced, all right to possession in the tenants had been terminated by completion of the harvest. Section 562.5, Code, 1966. We agree with both conclusions. Thomasson v. Wilson, 146 Ill. 384, 34 N.E. 432, holds contra to the position taken by defendant. The Illinois court there held that on termination of tenancy, the right to possession reverts to the

landlord and he may bring his action to oust the intruder. The statutes are somewhat different but the reasoning of the Illinois court is sound. We hold the plaintiffs were real parties in interest and entitled to bring this action.

 IV. Defendants contend they were in *"peaceable possession"* for at least 30 days prior to filing the notice to quit and this type action was therefore barred under section 648.18, Code, 1966. Defendants were not in peaceable possession for thirty days as that phrase has been defined by our cases. Litigation between the parties precludes peaceful possession. The parties had been in litigation over this particular acreage for over five years. At the time of occupancy defendants claimed ownership by virtue of failure to include Mrs. Northup in the prior litigation and stated they intended to test this claim in court. Plaintiffs waited until December 11, 1967 when no litigation was started they gave the required three days notice. The possession from October 6, 1967 to December 11, 1967, whatever else it was, was not peaceable. Rudolph v. Davis, 237 Iowa 1383, 1386, 25 N.W.2d 332; Town of Lakota v. Gray, 240 Iowa 193, 35 N.W.2d 841; Roshek Realty Co. v. Roshek Bros. Co., 249 Iowa 349, 87 N.W.2d 8.

V. Defendants complain the trial court considered evidence not properly in the record and matters on which no evidence was produced. We do not agree. Consideration of the prior litigation between the parties was admissible to show plaintiffs' rights in the premises as indicated in Division II. The finding that the trailer was parked on land not tillable was a fair inference from the testimony and the photograph produced. The proposition asserted is without merit.

VI. Neither Mr. Northup or Mrs. Northup now claim they have any legal right to occupy the land in question. They depend entirely on a narrow, legalistic interpretation of chapter 648 to sustain a possession initially obtained by stealth, in that they moved on the property when no one was around, and by force, in that they fought the sharecroppers who were tilling the land, threatened them and demanded the landlords' share of the crops.

 Whatever the merits of any claims defendants might have they have no right to occupancy of the land in question pending their attempts to assert those rights. We do not mean to imply we think such rights exist, as we see none. We hold the entry onto plaintiffs' land in the manner and under the circumstances shown by the record violated chapter 648.1 (1) of the Code. The trial court's decree is affirmed.

Pending appeal this court issued a stay order prohibiting execution of the trial court's decree. Our order staying execution is hereby set aside effective on the issuance of procedendo implementing this opinion.

Affirmed.

All Justices concur.